# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

| | |
|---|---|
| SARAH LEFLAR, | |
| Plaintiff, | |
| v. | **Case No. 4:22-cv-00690-BRW** |
| HP INC., | |
| Defendant. | |

## MEMORANDUM BRIEF IN OPPOSITION TO MOTION TO REMAND

Defendant HP Inc. (hereinafter "HP"), respectfully submits this memorandum brief in Opposition to Plaintiff's Motion to Remand ("Motion"). For the reasons stated in HP's motion and in this brief, Plaintiff Sarah Leflar's Motion should be denied.

## I.       INTRODUCTION

Plaintiff brings one cause of action in this putative class action under the Magnuson-Moss Warranty Act ("MMWA"). HP removed this action to this Court on the basis of subject matter jurisdiction granted by the Class Action Fairness Act ("CAFA"). Plaintiff has now filed the pending Motion, seeking remand on the grounds that: (1) the MMWA precludes federal jurisdiction in the absence of specific jurisdictional requirements set forth in the MMWA, and (2) Plaintiff's claim does not meet CAFA's $5,000,000 amount-in-controversy requirement. Plaintiff's argument misconstrues the MMWA and applies an incorrect framework for the amount-in-controversy calculus. As set forth in greater detail below, this Court has subject matter jurisdiction under the plain language of CAFA and the MMWA, the authority of this

Circuit supports this application of CAFA and the MMWA, and the aggregate maximum value of the MMWA claim to the putative class greatly exceeds $5,000,000.

The MMWA provides two possible jurisdictional bases for a private right of action. Under 15 U.S.C. § 2310(d)(1)(A) ("Section 2310(d)(1)(A)"), an action may proceed in "any court of competent jurisdiction in any State or the District of Columbia." Alternatively, under 15 U.S.C. § 2310(d)(1)(B) ("Section 2310(d)(1)(B)"), an action may proceed in federal court where: (1) the amount of any individual claim is more than $25, (2) the amount in controversy is more than $50,000, and (c) there are at least 100 named plaintiffs. Here, the Court has jurisdiction under Section 2310(d)(1)(A) because it is a court in the State of Arkansas with competent jurisdiction under CAFA. Specifically, this case meets CAFA's jurisdictional requirements of: (1) minimal diversity, (2) at least 100 putative class members, and (3) an amount in controversy of at least $5,000,000. The case law construing CAFA and MMWA supports this straightforward compliance with MMWA's jurisdictional structure.

Nonetheless, Plaintiff argues that the MMWA precludes CAFA jurisdiction in this case. First, Plaintiff completely ignores Section 2310(d)(1)(A) as a basis for this Court's jurisdiction and argues that the MMWA precludes any federal court from exercising jurisdiction if the requirements of Section 2310(d)(1)(B) are not met. This interpretation contradicts a substantial body of case law authorizing CAFA jurisdiction over MMWA claims. Notably, the primary basis for Plaintiff's argument is *Floyd v. Am. Honda Motor Co.*, a Ninth Circuit case that is not binding on this Court and which did not consider Section 2310(d)(1)(A); instead, it only considered the narrow, irrelevant question of whether CAFA "impliedly repealed" the requirements of Section 2310(d)(1)(B). Moreover, to take the position, as Plaintiff does here, that Section 2310(d)(1)(B) must be satisfied regardless of whether an independent basis for

jurisdiction exists runs contrary to the myriad cases demonstrating federal courts exercising jurisdiction over MMWA claims, even where the requirements of Section 2310(d)(1)(B) were not met. Specifically, federal courts across numerous jurisdictions and within this Circuit have exercised supplemental jurisdiction or CAFA subject matter jurisdiction over MMWA claims, without regard to the absence of the MMWA's jurisdictional requirements. As such, *Floyd* does not support Plaintiff's theory that Section 2310(d)(1)(B) requirements must be satisfied for federal courts to exercise jurisdiction over MMWA claims, regardless of whether Section 2310(d)(1)(A) is satisfied; moreover, construing *Floyd* in this manner would be plainly incorrect in light of the landscape of case law demonstrating otherwise. Unsurprisingly, no court in this Circuit has adopted *Floyd*'s reasoning and, in fact, every Eighth Circuit court which has considered *Floyd* has rejected it.

Second, Plaintiff alternatively argues that, for the Court to exercise CAFA jurisdiction over the MMWA claim, it must also have jurisdiction over a separate claim. There is no legal authority establishing this purported rule. Although cases exist in which courts that exercised CAFA jurisdiction over MMWA claims could have also exercised supplemental jurisdiction over the MMWA claims based on other claims, this is an incidental circumstance rather than the basis of any legal principle.

Finally, Plaintiff argues that this case does not meet CAFA's $5,000,000 amount-in-controversy requirement. Plaintiff's contentions are unavailing. Although Plaintiff asserts that she is not seeking damages, prior to class certification a representative of a putative class is not authorized to waive any class member's right to damages. Next, Plaintiff argues that the amount in controversy should only be calculated based on the cost to HP of processing warranty claims.

However, case law is clear that the amount in controversy may be based on the aggregate maximum potential value to the putative class.

Here, Plaintiff alleges that HP improperly voids its product warranty, under which it agrees to repair or replace products with a manufacturing defect or failure. Accordingly, the maximum value of this right (and thus the amount in controversy) to each putative class member is the replacement value of the product. Indeed, Plaintiff's own Complaint supports using the replacement value to measure value to putative class members, as she alleges that HP's conduct forces consumers to purchase new products: "Defendant's anticompetitive practices enables it (and similarly-situated companies) to **force consumers to buy new products** through planned obsolescence." (Doc. 2, ¶ 46.) Contemporaneous with this Opposition, HP submits evidence that the aggregate sales of products to consumers in Arkansas during the class period defined in the Complaint well exceed $5,000,000. CAFA's amount-in-controversy requirement is thus met even before the Court takes into account other appropriate bases, such as Plaintiff's request for attorney fees.

For these reasons, HP respectfully requests that the Court deny Plaintiff's Motion.

## II.    ARGUMENT

### A.    The MMWA Does Not Preclude CAFA Jurisdiction.

Plaintiff brings one cause of action for violation of the MMWA. (Doc. 2., ¶¶ 62-71). The MMWA provides two bases for federal jurisdiction: (1) under Section (d)(1)(A), "in any court of competent jurisdiction in any State or the District of Columbia," or (2) under Section (d)(1)(B), "in an appropriate district court of the United States," if three jurisdictional conditions are met.[1]

---

[1]    Under 15 U.S.C. § 2310(d)(3), a claim may not be brought under Section 2310(d)(2)(B):

Here, the Court may exercise CAFA jurisdiction over Plaintiff's MMWA claim under Section 2310(d)(2)(A).

Plaintiff argues that the Court cannot exercise jurisdiction over any MMWA claim where the jurisdictional requirements of Section 2310(d)(2)(B) are not met, regardless of whether any basis for jurisdiction under Section 2310(d)(2)(A) exists. (Doc. 9, at 6-9.) However, this argument is belied by the plain language of the MMWA and a substantial body of case law applying CAFA jurisdiction to MMWA claims. Further, the case law upon which Plaintiff relies is inapposite and not controlling on this Court.

1. The Plain Language Of CAFA And the MMWA Support This Court's Jurisdiction Over Plaintiff's Claim.

This Court has subject matter jurisdiction over Plaintiff's claim based on the plain language of CAFA and the MMWA. As noted above, the MMWA authorizes a civil action under Section 2310(d)(1)(A) if a court has "competent jurisdiction" *or* under Section 2310(d)(1)(B) if specific jurisdictional requirements are met. As explained by one court in the Eighth Circuit:

> The MMWA authorizes jurisdiction in two alternative venues: (1) "any court of competent jurisdiction in any State or the District of Columbia"; and (2) "an appropriate district court of the United States." 15 U.S.C. § 2310(d)(1)(A)-(B). The 100-named-plaintiff limitation applies to the second category, but not the first. *See id*. § 2310(d)(3) (providing restrictions for "a suit brought under paragraph (1)(B) of this subsection"). By the statute's plain text, federal courts fall in both categories. They fall in the first category because federal courts are "in"—i.e., within the boundaries of—states and the District of Columbia. Had a different preposition been used in describing the first category—"of," for example—then the statute's text would not be susceptible to this interpretation. A federal court is not a court "of" any state. In other words, if a federal court has

---

(A) if the amount in controversy of any individual claim is less than the sum or value of $25;
(B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; or
(C) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred.

some other source of subject-matter jurisdiction, then it may be a "court of competent jurisdiction" under the MMWA. The second category is limited to federal courts.

*Barclay v. ICON Health & Fitness, Inc*., 2020 U.S. Dist. LEXIS 191215, at *22 (D. Minn. Oct. 15, 2020).

CAFA provides that a district court has original jurisdiction over any class action in which: (1) the amount in controversy exceeds $5,000,000; (2) there is minimal diversity, i.e., any member of a class of plaintiffs is a citizen of a State different from any defendant; and (3) the number of members of all proposed plaintiff classes in the aggregate is greater than 100. 28 U.S.C. §§ 1332(d)(2), (d)(5). CAFA is meant to be interpreted broadly; As the Eighth Circuit explained, "CAFA 'is intended to expand substantially federal court jurisdiction over class actions.'" *Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010) (holding that district court erred in granting remand, as doubt regarding applicability of CAFA's local controversy exception should have been resolved against remand), *citing* S. Rep. No. 109-14, at 43 (2003). Accordingly, "no antiremoval presumption attends cases invoking CAFA." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013) (vacating judgment remanding case, where district court should have ignored stipulation that class would seek less than $5MM in damages; named plaintiff could not legally bind members of proposed class before certification).

In construing these two statutes, courts have repeatedly exercised CAFA subject matter jurisdiction over MMWA claims pursuant to Section 2310(d)(1)(A). *See, e.g., Barclay*, 2020 U.S. Dist. LEXIS 191215, at *24 ("[O]nce plaintiffs have satisfied CAFA, the MMWA's additional requirements do not apply."); *Dack v. Volkswagen Grp. of Am.*, 565 F. Supp. 3d 1135, 1143 (W.D. Mo. 2021) ("Plaintiffs are not required to satisfy the MMWA's requirements in light of this Court's jurisdiction under CAFA"); *In re GM Air Conditioning Mktg. & Sales Practices*

*Litig.*, 568 F. Supp. 3d 837, 842-843 (E.D. Mich. 2021) ("'many courts' have held that where there is an independent basis for subject-matter jurisdiction over an action that includes an MMWA claim, 'federal jurisdiction [over that claim] may still be appropriate [even] when [the MMWA's own Jurisdictional Thresholds] are not satisfied.'"); *Bechtel v. Fitness Equip. Servs.*, 339 F.R.D. 462, 478 n.5 (S.D. Ohio 2021) ("Courts in this Circuit have determined that plaintiffs need not meet the MMWA's strict numerical class requirements where jurisdiction is established under the Class Action Fairness Act"); *Chapman v. GM LLC*, 531 F. Supp. 3d 1257, 1305 (E.D. Mich. 2021) ("if a district court had jurisdiction over an MMWA claim through CAFA, it would meet the requirements of (A), and the 100 named plaintiffs requirement would not apply."); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 293 (S.D.N.Y. 2015) ("the vast majority of courts have held that, where its conditions are met, CAFA provides an alternative basis for jurisdiction without regard for the MMWA."); *Chavis v. Fid. Warranty Servs.*, 415 F. Supp. 2d 620, 626 (D.S.C. 2006) ("CAFA provides an alternate basis by which federal courts may become courts of "competent jurisdiction" under 15 U.S.C. § 2310(d)(1)(A).").

As the Sixth Circuit held, "CAFA effectively supercedes [sic] the MMWA's more stringent jurisdictional requirements." *Kuns v. Ford Motor Co.*, 543 F. App'x 572, 574 (6th Cir. 2013) (affirming district court finding that it had jurisdiction under CAFA "nothwithstanding the MMWA's jurisdictional limitations" and noting "district courts have, as a general rule, held" CAFA jurisdiction applies to MMWA claims). *Kuns* has been widely followed by the courts. *In re GM Air Conditioning Mktg. & Sales Practices Litig.*, 568 F. Supp. 3d 837, 841-42 (E.D. Mich. Oct. 26, 2021) ("this Court chooses to follow [*Kuns*]"); *Chapman v. GM LLC*, 531 F. Supp. 3d 1257, 1305 (E.D. Mich. Mar. 31, 2021) ("The Court will follow *Kuns*."); *Dayan v. Swiss-American Prods.*, 2017 U.S. Dist. LEXIS 1121, *27-28 (E.D.N.Y. Jan. 3, 2017) (relying

on *Kuns*; finding "analysis that CAFA grants MMWA jurisdiction to be persuasive"), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 50773 (E.D.N.Y. Mar. 31, 2017); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 293 (S.D.N.Y. Feb. 20, 2015) (agreeing with *Kuns* and "the weight of authority" that CAFA jurisdiction applies to MMWA claims).

Here, the Court has jurisdiction under Section 2310(d)(1)(A). Specifically, this Court is a court of "competent jurisdiction" within the state of Arkansas because it has subject matter jurisdiction under CAFA. HP's Notice of Removal demonstrated that CAFA's jurisdictional requirements are met because: (1) the products whose warranties are at issue in this case have a face value of over $5,000,000; (2) HP's records reflect thousands of sales of products at issue to consumers within Arkansas; and (3) Plaintiff and HP are citizens of different states. (Doc. 1, at ¶¶ 7-14.)

 2.   Plaintiff Does Not Cite Controlling Or Compelling Authority Otherwise.

Plaintiff's arguments against the Court's exercise of CAFA jurisdiction lack merit. Plaintiff predominantly relies on *Floyd*, a Ninth Circuit decision that is not binding on this Court, and its progeny. However, *Floyd* should have no bearing on this Court's decision, because *Floyd* is wholly distinguishable, conflicts with a substantial body of case law, and has been rejected by courts in the Eighth Circuit.

Significantly, *Floyd* considered a much narrower and different question than the one before this Court. The parties in *Floyd* had (erroneously) conceded that Section 2310(d)(1)(B) precluded federal courts from exercising subject matter jurisdiction where there were fewer than 100 named plaintiffs, and the parties instead argued (unsuccessfully) to the Ninth Circuit that CAFA impliedly repealed the Section 2310(d)(1)(B) jurisdictional requirements:

 [T]he plaintiffs in *Floyd* presented only a narrow argument to the Ninth Circuit. . . . [I]t appears they conceded that the MMWA's Class Action Jurisdictional Threshold categorically stripped federal courts of subject-matter jurisdiction to hear any MMWA class claim involving less than 100 named plaintiffs. And they argued that CAFA

8

'impliedly repealed' the Class Action Jurisdictional Threshold. The Ninth Circuit rejected that argument.

*In re GM Air*, 568 F. Supp. 3d at 844 (internal citations omitted).

Because of this procedural posture, the parties did not raise, and the Ninth Circuit did not consider, whether a federal court could exercise jurisdiction under Section 2310(d)(1)(A) of the MMWA, which provides jurisdiction to "any court of competent jurisdiction in any State or the District of Columbia." *See Barclay*, 2020 U.S. Dist. LEXIS 191215, at *23 ("these courts [including *Floyd*] do not consider—at least not explicitly—whether a federal court could ever be a 'court of competent jurisdiction in any State.'"). *See also In re GM Air*, 568 F. Supp. 3d at 844 ("There is no indication [in *Floyd*] that they argued that the MMWA's Class Action Jurisdictional Threshold applied only to the subject-matter jurisdiction conferred by section 310(d)(1)(B) of the MMWA."); *Chapman v. GM LLC*, 531 F. Supp. 3d 1257, 1305 (E.D. Mich. 2021) ("*Floyd* does not wrestle with the fact that the MMWA defines two categories of courts with jurisdiction over MMWA claims.").

Moreover, to the extent *Floyd* could be construed to hold that no federal court can exercise jurisdiction over an MMWA claim unless Section 2310(d)(1)(B)'s requirements are met, regardless of any other jurisdictional ground, such interpretation would be plainly incorrect. In fact, this interpretation would conflict with "a substantial body of case law holding that a federal district court may hear an MMWA claim that does not satisfy the MMWA's Jurisdictional Thresholds if the court has subject-matter jurisdiction over the claim under some other statute." *In re GM Air Conditioning Mktg. & Sales Practices Litig.*, 568 F. Supp. 3d 837, 842 (E.D. Mich. 2021) (citing cases). Indeed, "[c]ourts have repeatedly held . . . that a district court may exercise supplemental jurisdiction over an MMWA claim where the claim, standing alone, fails to meet the MMWA's Jurisdictional Thresholds." *Id.*; *see also Voelker v. Porsche*

*Cars North America*, 353 F.3d 516, 522 (7th Cir. 2003) (where district court had jurisdiction based upon plaintiff's assertion of a claim under the federal Truth in Lending Act, court could exercise supplemental jurisdiction over MMWA claim that did not meet MMWA's jurisdictional requirements); *Burzlaff v. Thoroughbred Motorsports, Inc*., 758 F.3d 841, 844-46 (7th Cir. 2014) (same); *Suber v. Chrysler Corp*., 104 F.3d 578, 588 n.12 (3d Cir. 1997) (same). .

For these reasons, courts in the Eighth Circuit have declined to follow *Floyd* in determining whether to exercise CAFA jurisdiction under Section 2310(d)(1)(A) of the MMWA. *See Barclay*, 2020 U.S. Dist. LEXIS 191215, at *22 (rejecting *Floyd* and related cases, holding instead that "the better answer is that once plaintiffs have satisfied CAFA, the MMWA's additional requirements do not apply"); *see also Dack*, 565 F. Supp. 3d at 1143 ("In the absence of authority from the Eighth Circuit, this Court finds *Barclay* to be the better reasoned approach, and accordingly finds Plaintiffs are not required satisfy the MMWA's requirements in light of this Court's jurisdiction under CAFA.").

This Court should reject *Floyd* for the same reasons as *Barclay* and *Dack*. *Floyd* has no bearing on this case, as it did not consider the straightforward, plain language interpretation that authorizes the Court's jurisdiction in this matter. The "implied repeal" argument that *Floyd* considered has no relevance here, where the Court's analysis is not limited to Section 2310(d)(1)(B). Despite Plaintiff's argument otherwise (Doc. 9, at 7-9), the Court's exercise of CAFA jurisdiction does not require any "implied repeal" of Section 2310(d)(1)(B), because its jurisdiction is instead grounded in Section 2310(d)(1)(A).

**B.**    **Additional Causes of Action Are Not Required For Courts To Exercise Jurisdiction Over MMWA Claims Under CAFA.**

Plaintiff next argues that, for a federal court to exercise jurisdiction over an MMWA claim where Section 2310(d)(1)(B) requirements are not met, the court must also have jurisdiction over a separate claim (thus giving rise to supplemental jurisdiction over the MMWA claim). On this ground, Plaintiff contends that the Court cannot exercise jurisdiction over her claim, because it is a standalone MMWA claim, with no "separate" claim giving rise to jurisdiction.[2] This argument fails because it is not supported by legal authority and is instead based on the incidental – but nonessential – presence of additional claims in cases.

As an initial matter, courts have found CAFA jurisdiction even over standalone MMWA claims, such as Plaintiff's. *See, e.g.*, *Chavis*, 415 F. Supp. 2d at 621 (finding CAFA jurisdiction over standalone MMWA claim). Moreover, although the plaintiffs in *Kuns* and its progeny may have asserted additional state law claims, that factor was not controlling. Instead, those cases turned on whether the requirements of CAFA itself were satisfied. *See, e.g.*, *Kuns*, 543 F. App'x at 574 (affirming district court's ruling that the CAFA "'can render a district court a court of competent jurisdiction and permit it to retain jurisdiction where the CAFA requisites are met but the MMWA requisites are not.'") (citation omitted). As plainly stated by these courts, "once

---

[2]    Plaintiff misconstrues *Barclay* as support for her position, quoting out of context its statement that, "[i]f the MMWA is a plaintiff's ***sole*** basis for asserting federal jurisdiction, then that plaintiff needs to meet the MMWA's extra jurisdictional requirements." *Barclay*, 2020 U.S. Dist. LEXIS 191215, at *22 (emphasis in original).

Read in full, *Barclay* stands for the proposition that, if there is no other ground for a court to have "competent jurisdiction" under Section 2310(d)(1)(A), then a federal court may only exercise jurisdiction where the requirements of Section 2310(d)(1)(B) are satisfied. If there exists another ground for jurisdiction, such as CAFA or supplemental jurisdiction, there would be no need to satisfy the requirements of Section 2310(d)(1)(B). Nowhere does *Barclay* state that a plaintiff must assert a separate claim, aside from the MMWA claim, before a federal court may exercise jurisdiction.

11

plaintiffs have *satisfied CAFA*, the MMWA's additional requirements do not apply." *Barclay*, 2020 U.S. Dist. LEXIS 191215, at *24 (emphasis added); *Dack*, 565 F. Supp. 3d at 1143 ("Plaintiffs are not required to satisfy the MMWA's requirements in light of this Court's jurisdiction *under CAFA*" (emphasis added)). Glaringly, there is no mention of any requirement of state law claims, nor does Plaintiff cite to any language indicating such a requirement.

The fact that a separate claim may have provided the court with an additional basis to exercise jurisdiction over an MMWA claim[3] does not create a new legal requirement that a separate claim is required for jurisdiction over an MMWA claim. Plaintiff has failed to provide any legal authority for the Court to remand the case on this ground, and this argument thus be rejected.

**C.    Plaintiff's Claim Satisfies CAFA's $5,000,000 Amount-In-Controversy Requirement.**

Finally, Plaintiff argues that, even if this Court could exercise CAFA jurisdiction over her MMWA claim, CAFA jurisdiction fails because the $5,000,000 amount-in-controversy requirement is not met. (Plaintiff does not challenge HP's showing of minimal diversity or that the putative class has more than 100 members, and she thus concedes these points.[4]) Plaintiff argues that she only seeks declaratory and injunctive relief, that the amount in controversy should be measured only by HP's cost of processing warranty claims, and that HP's calculation

---

[3]    *See, e.g.*, *Burzlaff*, 758 F.3d at 845 ("The district court therefore had original diversity jurisdiction over the state law claim. It could then properly exercise supplemental jurisdiction over the Magnuson-Moss Act claim.")

[4]    Throughout the Motion, Plaintiff complains that HP's jurisdictional assertions are not supported by evidence or declarations. However, HP was not required to include such evidence in its notice of removal. "Evidence establishing the amount [in controversy] is required . . . only when the plaintiff contests, or the court questions, the defendant's allegation." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

of the amount placed in controversy by Plaintiff's claims is the incorrect framework. Each of these claims fails.

1.      Plaintiff Cannot Waive Claims On Behalf Of Putative Class.

First, Plaintiff attempts to disavow any potential damages award, emphasizing that "Plaintiff solely seeks equitable and declaratory relief" and "does not 'assert[] an individual claim for damages at all." (Doc. 9, at 5.) However, Plaintiff does not have the authority to waive putative class members' right to seek damages. As explained by the United States Supreme Court, a prospective class member cannot legally bind members of a proposed class before the class is certified. *See Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 596 (2013) ("[T]he stipulation at issue here can tie [the individual plaintiff's] hands, but it does not resolve the amount-in-controversy question in light of his inability to bind the rest of the class."). Indeed, as the named representative of the putative class, it is Plaintiff's fiduciary duty not to "throw away what could be a major component of the class's recovery." *Id*. at 594.

2.      The Amount In Controversy Is Properly Measured By Aggregate Potential
         Value To Putative Class.

Plaintiff alternatively argues that, even if damages are considered, the amount in controversy should only be calculated based on the cost to HP of processing additional warranty claims. (Doc. 9, at 14.) Plaintiff's theory is contradicted by case law construing this requirement.

To determine whether the $5,000,000 amount-in-controversy requirement is satisfied under CAFA, the Court considers the maximum possible value of the plaintiff's claims. *See Raskas v. Johnson & Johnson*, 719 F.3d 884, 887 (8th Cir. 2013) ("[t]he amount in controversy is simply an *estimate of the total amount in dispute*, not a prospective assessment of defendant's liability"); *see also Walters v. Famous Transps., Inc*., 2020 U.S. Dist. LEXIS 21801, at *8 (N.D.

13

Cal. 2020) ("[A] court limits its consideration as to the amount in controversy to the allegations in the complaint at the time of removal, and further to the *maximum relief available* under those allegations.") (emphasis added); *Hardig v. Certainteed Corp.*, 2012 U.S. Dist. LEXIS 15852, at *6 (W.D.N.C. 2012) (in determining amount in controversy, appropriate to rely on "'*maximum value* that this action could possibly represent to each putative class member' for replacement costs.") (emphasis added); *Lee-Bolton v. Koppers Inc.*, 848 F. Supp. 2d 1342, 1355 (N.D. Fla. 2011) ("This figure is the proper measure of the amount in controversy in this action as it is the *maximum value* that this action could possibly represent to each putative class member") (emphasis added). In other words, the inquiry focuses on the amount the plaintiff put "in controversy", and not whether the plaintiff will even likely recover this amount. *See Raskas*, 719 F.3d at 887; *see also Spivey v. Vertrue, Inc.*, 528 F.3d 982, 985-86 (7th Cir. 2008) (in class action suit over unauthorized credit card charges, finding that the *total* charges were sufficient to meet the defendant's burden to establish amount in controversy because plaintiffs' claim that they were subjected to *some* unlawful charges put into controversy the propriety of *all* of the charges).

In calculating this maximum value, the court looks to the total aggregated value to the plaintiff class: "Since CAFA expressly contemplates aggregation, and CAFA's evident purpose is to expand federal jurisdiction, the proper approach to valuing claims for injunctive relief under CAFA seems to be to use the total benefit to the plaintiff class or the aggregate cost to the defendant." *Toller v. Sagamore Ins. Co.*, 558 F. Supp. 2d 924, 930-31 (E.D. Ark. 2008).

Where, as here, the plaintiff seeks declaratory or injunctive relief based on the alleged invalidity of a contract, the amount in controversy is measured by the value of the contract. *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured

by the value of the object of the litigation."); *Home Ins. Co. v. Trotter*, 130 F.2d 800, 803 (8th

Cir. 1942) ("[W]here in such actions the relief sought is a declaration of the validity of invalidity

of a contract, the value of the contract determines the amount in controversy for the purpose of

determining jurisdiction."); *see also Toller*, 558 F. Supp. 2d at 930 ("If the insurer or insured is

bringing the action to question the validity of the entire contract between the parties, the amount

in controversy is the face value of the policy").

Based on these authorities, the amount placed in controversy by Plaintiff's MMWA claim

is appropriately calculated as the aggregate value of HP's product warranty to the putative class.

3.   Plaintiff's Claim Places Over $5MM In Controversy.

CAFA's $5,000,000 minimum amount-in-controversy requirement is satisfied by the

aggregate value to the class of the disputed warranty alone, and it is further exceeded by the

statutory attorney fees that Plaintiff seeks.

HP easily satisfies its obligation to establish the amount in controversy with

uncontroverted evidence of its Arkansas sales from June 23, 2021 to July 29, 2022.  *Lizama v.

Victoria's Secret Stores, LLC*, 36 F. 4th 762, 765 (8th Cir. 2022) ("When a plaintiff contests the

amount in controversy after removal, the party seeking to remove under the Class Action

Fairness Act must establish the amount in controversy by a preponderance of the evidence.")

"The relevant jurisdictional fact is whether a factfinder might legally conclude that the amount in

controversy exceeds the jurisdictional amount." *Id*. Both the language of the subject warranty

and Plaintiff's own allegations establish that the maximum value of the disputed warranty to the

putative class is the cost of replacing the product covered by the warranty. HP's records establish

that the cost of these products to the putative class is well over $5,000,000. The amount in

controversy requirement is thus met even before accounting for other components, such as plaintiff's request for attorney fees.

HP provides its customers with a limited product warranty, under which it agrees to repair or replace products that suffer a manufacturing defect or failure. (*See* Doc 10-1, at Ex. A.) Plaintiff alleges that HP's product warranty is illegal because it voids warranty coverage under circumstances prohibited by the MMWA. (*See, e.g.*, Doc. 2, ¶¶ 4-5.) The clear import of this allegation is that HP illegally refuses to repair or replace products that should be covered under its warranty. A putative class member who is denied this warranty benefit is damaged in the amount it would cost that class member to repair or replace the product themselves. As a result, the maximum value to each class member is the replacement value of the product.

Indeed, Plaintiff's own allegations effectively concede that the amount in controversy to each putative class member may constitute the replacement value of the products covered under the disputed warranty. Specifically, Plaintiff asserts that HP's allegedly improper warranty restrictions create an anticompetitive environment that forces consumers to purchase replacement products:

> . . . Defendant's anticompetitive practices enables [*sic*] it (and similarly-situated companies) to **force consumers to buy new products** through planned obsolescence. When it costs almost as much to repair an existing product as it does to buy a new version of the same product, consumers will likely opt to buy the new product.

(Doc. 2, ¶ 46 (emphasis added).)

Without question, the aggregate value to the putative class of replacing their products is well over $5,000,000. Since June 23, 2021, HP has shipped more than 3,500 orders of PCs and accessories subject to warranty to customers in Arkansas, for a total sales price of $5,114,279.55. *See* Declaration of Jeanette Diamond ("Diamond Decl."), ¶ 4, Ex. A. Accordingly, for the class period defined in the Complaint, the amount in controversy exceeds $5,000,000.

Notably, the actual amount in controversy is even higher than HP's replacement value calculation for the putative class. The Court may also properly consider the statutory attorney fees that Plaintiff seeks in this action, which are likely to be considerable. *See Crawford v. F. Hoffman La Roche*, 267 F.3d 760, 766 (8th Cir. 2001) ("Statutory attorney fees do count toward the jurisdictional minimum for diversity jurisdiction."). The MMWA allows a court to award a prevailing consumer "costs and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred." 15 U.S.C. § 2310(d)(2). Given the "risk and complexity involved in prosecuting class actions, and the hourly rates charged," the amount of attorneys' fees at issue could easily exceed $1,000,000. *Faltermeier v. FCA US LLC*, 899 F.3d 617, 621 (8th Cir. 2018) (affirming district court ruling that CAFA amount in controversy was met where, in addition to damages, fees could exceed $1.4 million). Here, the median billable rate for an attorney in Arkansas in the class action context is approximately $200 to $450 per hour.[5] District courts in the Eighth Circuit have found that consumer class actions require a significant amount of attorney hours to litigate. *Yarrington v. Solvay Pharms., Inc.*, 697 F.Supp.2d 1057, 1063 (D. Minn. Mar. 16, 2010) (finding Class Counsel reasonably "expended over 5,453.5 hours to litigate and resolve this dispute"); *Pollard v. Remington Arms Col., LLC*, 320 F.R.D. 198, 221 (W.D. Mo.  Mar. 14, 2017), *aff'd*, 896 F.3d 900 (8th Cir. 2018) (finding class counsel reasonably expended more than 19,000 hours and approving fee application in amount of $12.5 million). Further, Plaintiff's counsel has received attorneys' fees awards in excess of $2 million. *See Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1111 (9th Cir. 2020) (affirming award of $3.89 million); *Matera v. Google LLC*, 2018 U.S. Dist. LEXIS 245919, at *12-16 (N.D. Cal. Feb. 9, 2018) (granting motion requesting $2.2 million in

---

[5] *See* https://www.nclc.org/images/pdf/litigation/tools/atty-fee-survey-2015-2016.pdf

fees). Accordingly, the prospect of a fee award adds, at a minimum, $1,000,000 to the amount in controversy.

Based on the pleadings and evidence before the Court, the amount in controversy for Plaintiff's claim plainly satisfies the $5,000,000 jurisdictional requirement of CAFA.

4.  <u>Plaintiff Cannot Meet Her Burden To Establish To A Legal Certainty That The Amount In Controversy Is Less Than $5MM.</u>

"If the defendant establishes by a preponderance of the evidence that the jurisdictional minimum is satisfied, then remand is appropriate *only if* the plaintiff establishes to a legal certainty that the claim is for less than the requisite amount." *Lizama v. Victoria's Secret Stores*, LLC 36 F. 4th 762, 765 (8th Cir. 2022) (emphasis added). In other words, "[o]nce the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5 million … then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much." *Raskas,* 719 F.3d at 888. To meet this "legal certainty" standard, the plaintiff must show that the jurisdictional amount could not be recovered "as a matter of law" or that "no reasonable jury could award damages totaling more than" the jurisdictional amount. *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002).

Here, Plaintiff cannot establish that it is "legally impossible" that the object of the litigation meets the $5,000,000 amount-in-controversy threshold. *Raskas,* 719 F.3d at 888; *Keeling v. Esurance Ins. Co*., 660 F.3d 273, 274-75 (7th Cir. 2011) (reversing district court remand order where, even if improbable, it was "legally possible" that claim for injunctive relief could result in financial loss of $2 million over 20 years and $3 million of punitive damages); *Back Doctors Ltd. v. Metropolitan Property and Cas. Ins. Co*., 637 F.3d 827, 830 (7th Cir. 2011)

("[U]nless recovery of an amount exceeding the jurisdictional minimum is legally impossible, the case belongs in federal court.").

Plaintiff argues that "the proper valuation of the amount in controversy is whatever additional cost HP will bear by being precluded from voiding warranties of products with third-party repair or parts – or the delta between what it already incurs in warranty costs and what it plausibly anticipates it could incur if it could not void warranty coverage based solely on the existence of third-party repair or parts." (Doc. 9 at 14.) However, Plaintiff ignores the controlling authority in this Circuit that the inquiry focuses on the *total value placed at issue*, and not how much Plaintiff may likely recover from that amount, nor how much HP costs might incur[6] as a result: "Even if it is highly improbable that the Plaintiffs will recover the amounts Defendants have put into controversy, this does not meet the legally impossible standard." *Raskas*, 719 F.3d at 888. *Spivey*, 528 F.3d at 985-86 (where complaint alleged "that making unauthorized charges is a standard practice [of the defendant, plaintiff's] allegations thus put into 'controversy' the propriety of all of [the defendant's] charges", regardless of whether plaintiff will likely prove that all charges were unauthorized). Nor is it HP's obligation to provide any methodology as to how much Plaintiff's damages or HP's costs might ultimately be. *Raskas*, 719 F.3d at 888 ("Defendants are not required to provide a 'formula or methodology for calculating the potential damages' more accurately"). Instead, it is Plaintiff's burden to demonstrate, with evidence, that it

---

[6] Further, Plaintiff's attempt to "circumscribe the 'object' of the litigation to exclude the practical and monetary effects of the relief sought, however, strains credulity." *Adams v. Am. Family Mut. Ins. Co.*, 981 F.Supp.2d 837, 847-849 (S.D. Iowa Nov. 8, 2013) (concluding costs incurred by a defendant in complying with an injunction or declaratory judgment "constitute appropriate considerations in determining the amount in controversy"). Indeed, Plaintiff's proposed methodology is unreasonably limited and falls woefully shy of measuring the substantial pecuniary costs to HP that could logically flow from the relief sought by the putative class. Moreover, Plaintiff ignores her own allegations that the conduct at issue in this litigation causes putative class members to incur the equivalent of the replacement cost for a product.

would be legally impossible for the value to the class to total over $5 million. As Plaintiff failed to satisfy her burden, her Motion must be rejected. *Dammann v. Progressive Direct Ins*. Co., 856 F.3d 580, 584 (8th Cir. 2017) ("We conclude that the plaintiffs here have failed to show that it is legally impossible for them to recover more than $5,000,000. While they put Progressive's sales practices at issue and seek a refund of their premium payments, they have not offered evidence to establish the amount they collectively paid in premiums. Without such information, we cannot determine whether it would be legally impossible for them to recover $5,000,000."); *see also Harris v. Meridian Med. Techs., Inc*., 2021 U.S. Dist. LEXIS 85149, at *6-7 (E.D. Mo. 2021) ("Plaintiff argues that Defendant has not proved that she is entitled to punitive or emotional distress damages. However, that misplaces the burden. It is Plaintiff who must prove at this stage that it is legally impossible for a fact-finder to award such damages in an amount sufficient to exceed the jurisdictional amount when combined with other damages sought.").

## III.   <u>CONCLUSION</u>

For the foregoing reasons, HP respectfully requests that Plaintiff's Motion be denied.

Respectfully submitted,
WILLIAM A. WADDELL, JR.
ARK BAR ID NO. 84154
FRIDAY, ELDREDGE & CLARK, LLP
400 West Capitol Avenue, Suite 2000
Little Rock, Arkansas  72201-3522
Telephone:  (501) 376-2011
waddell@fridayfirm.com

*Attorneys for Defendant, HP Inc.*

20